UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRI SUZANNE THOMAS,<br><br>           Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,<br><br>           Defendant. | Case No.  1:22-cv-00200-HBK<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY [1]<br><br>(Doc. Nos.  12, 14) |

Jerri Suzanne Thomas ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits and disabled widow's insurance benefits under the Social Security Act.  (Doc. No. 1).  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.  (Doc. Nos. 12, 14-15).  For the reasons set forth more fully below, the Court denies Plaintiff's motion for summary judgment, grants Defendant's motion for summary judgment, and affirms the Commissioner's decision.

////

---

[1] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §636(c)(1).  (Doc. No. 10).

# I. JURISDICTION

Plaintiff protectively filed for disability insurance benefits on May 24, 2019, alleging an onset date of April 21, 2018. (AR 214-17). On June 12, 2019, Plaintiff filed an application for disabled widow's insurance benefits alleging the same onset date. (AR 15). Benefits were denied initially (AR 61-83, 107-111), and upon reconsideration (AR 84-106, 113-15). Plaintiff appeared before an Administrative Law Judge ("ALJ") on November 23, 2020. (AR 32-60). Plaintiff was represented by counsel, and testified at the hearing. (*Id.*). On December 16, 2020, the ALJ issued an unfavorable decision (AR 12-31), and on January 12, 2022 the Appeals Council denied review (AR 1-6). The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

# II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 57 years old at the time of the hearing. (*See* AR 257). She completed the eleventh grade. (AR 251). Plaintiff has work history as a resident care aide and pet and supplies salesperson. (AR 38-45, 342). Plaintiff testified that she stopped working because of anxiety and back issues. (AR 46-47). She reported she also has a stiff neck and she "think[s] she [has] carpal tunnel." (AR 47). Plaintiff decided not to have recommended back surgery because she is "terrified" of surgery, and she has constant back pain. (AR 48). The most she can lift is a small bag of groceries, less than 20 pounds maximum. (AR 48-49). She testified that her anxiety is "not as bad" because her physical symptoms make her tired, but she has trouble sleeping at times and feels like her physical condition is getting worse. (AR 49-51). She cannot turn, twist, bend, or stoop; she has severe pain; she loses her balance; her leg goes out on her; and she gets out of breath at times due to COPD. (AR 51-52).

# III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §

4

404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 21, 2018, the alleged onset date. (AR 18). At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, fibromyalgia, restless leg syndrome, bilateral carpal tunnel syndrome, obesity, chronic obstructive pulmonary disease, and obstructive sleep apnea. (AR 18). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 20). The ALJ then found that Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) in that she can lift, carry, push, and/or pull 20 pounds occasionally, and 10 pounds frequently. She can stand or walk, in combination, for up to 6 hours in an 8-hour workday, with normal breaks. She can sit for up to 6 hours in an 8-hour workday, with normal breaks. The claimant can occasionally climb ramps, stairs, ladders, ropes and scaffolds, and can occasionally balance, stoop, kneel, crouch and crawl. She can have no more than occasional exposure to dust, odors, fumes, gases, poorly ventilated areas and other pulmonary irritants.

(AR 21).

At step four, the ALJ found that Plaintiff is able to perform past relevant work as a salesperson-pets and supplies as generally performed. (AR 25). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from April 21, 2018, through the date of the decision. (AR 25).

**VI.   ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits and disabled widow's insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly assessed the RFC; and

2. Whether the ALJ erred at step four in finding Plaintiff can do past relevant work.

(Doc. No. 12 at 5-12).

**VII.   DISCUSSION**

**A. RFC**

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. (*Id.*) (RFC determination will be affirmed if supported by substantial evidence). However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Ultimately, a claimant's RFC is a matter for the ALJ to determine. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ ... to determine residual functional capacity.").

Plaintiff appears to argue that the ALJ did not adequately explain why the RFC does not include limitations in Plaintiff's ability to engage in fine and gross manipulation due to her alleged carpal tunnel syndrome. (Doc. No. 12 at 9-12 (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review.")). Here, the ALJ summarized Plaintiff's symptom claims, including her reported problems using her hands due to carpal tunnel syndrome, and her reported pain, numbness, and tingling in her hands. (AR 22, 24). The ALJ also noted that Plaintiff was treated with wrist splints, and she was given a referral to surgery; however, she did not pursue

surgery, examinations have not found sensory or motor deficits in her upper extremities, and there is no evidence of impaired manual dexterity.  (AR 24, 388-89, 541, 682-83 (finding joint tenderness in wrists but no sensory or motor deficits).  Regardless, the ALJ specifically noted that she took Plaintiff's "carpal tunnel syndrome into consideration in assessing her abilities to lift, carry, push, and pull."  (AR 24).  Plaintiff generally argues that "[no] reasonable ALJ could examine the evidence as summarized by the ALJ herself and conclude that it does not affect Plaintiff's ability to engage in fine and gross manipulation."  (Doc No. 12 at 12).  However, Plaintiff fails to identify and challenge the ALJ's specific consideration of Plaintiff's bilateral carpal tunnel syndrome claims as part of the symptom claim analysis, including the extent of treatment and lack of medical objective evidence, to support any claimed limitations beyond the assessed RFC of light work.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to address issue not raised with specificity in Plaintiff's briefing); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).  Moreover, as argued by Defendant, Plaintiff fails to cite any objective evidence of manipulative limitations, nor has she identified any specific functional limitations related to carpal tunnel syndrome that were not properly accounted for in the assessed RFC.  (Doc. No. 14 at 10); *See Tommasetti*, 533 F.3d at 1038 (error is harmless where it is inconsequential to the ALJ's ultimate nondisability determination).

The Court concludes that the ALJ properly incorporated limitations into the RFC, including those related to Plaintiff's carpal tunnel syndrome, that the ALJ found credible and supported by substantial evidence in the record.  *Bayliss*, 427 F.3d at 1217.

**B. Step Four**

Pursuant to SSA regulations, "[a]t the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled."  20 C.F.R. § 404.1520(a)(4)(iv).  Claimants have the burden at step four to show they are unable to return to their past relevant work.  *Pinto v. Massanari,* 249 F.3d 840, 844 (9th Cir.2001).  Past relevant work is work that was "done within

7

1  the last 15 years, lasted long enough for [claimant] to learn to do it, and was substantial gainful
2  activity." 20 C.F.R. § 404.1565(a).
3        The ALJ may conclude a plaintiff can perform past relevant work by finding she is able to
4  perform the actual functional demands and duties of a particular past relevant job *or* finding she is
5  able to perform the functional demands and duties of the occupation as generally required by
6  employers throughout the national economy. *Pinto,* 249 F.3d at 845; *Stacy v. Colvin*, 825 F.3d
7  563, 569 (9th Cir. 2016) (ALJ may use either the 'actually performed test' or the 'generally
8  performed test' when evaluating a claimant's ability to perform past work). Thus, Plaintiff has
9  the burden to prove that she cannot perform her prior relevant work either as actually performed
10  or as generally performed. *Carmickle*, 533 F.3d at 1166. However, while "the burden of proof
11  lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to
12  support his conclusion." *Pinto,* 249 F.3d at 844-45 (noting the ALJ is not required to make
13  "explicit findings at step four regarding a claimant's past relevant work both as generally
14  performed and as actually performed."). To determine how a claimant *actually* performed his
15  work, an ALJ may consider: "(1) the claimant's own testimony, and (2) a properly completed
16  vocational report." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) (citing *Pinto*, 249
17  F.3d at 845); *see also* SSR 82–62, available at 1982 WL 31386, at *3 ("statements by the
18  claimant regarding part work are generally sufficient for determining the skill level, exertional
19  demands and nonexertional demands of such work"). Usually, "the best source for how a job is
20  *generally* performed" in determining the requirements of a claimant's past relevant work is the
21  *Dictionary of Occupational Titles*, and vocational expert testimony may be considered at step
22  four of the analysis. *Pinto*, 249 F.3d at 845–46 (emphasis added.
23        Here, Plaintiff reported that from 2006-2013 she worked for Porterville Pet Fair,
24  PetSmart, and Visalia Pet Fair. (AR 38-40, 264). She testified she did the "same things" at these
25  jobs, aside from working as a groomer at PetSmart for less than a year, and being moved from
26  working on the register, after her husband died, to working near the aquariums where she
27  "stocked and stuff like that." (AR 40). According to her work history report, Plaintiff's duties
28  included customer service, ringing up purchases, cleaning animal cages, and caring for the

8

animals and the store. (AR 265). Plaintiff also indicated she lifted "very heavy bags of dog food daily"; cleaned aquariums and cages weekly; frequently lifted 10 pounds; the heaviest weight she lifted was 50 pounds; and she did not climb, kneel, or crawl. (*Id*.). At the hearing, the ALJ propounded a hypothetical, and the vocational expert testified that individual would be able to do Plaintiff's past relevant work of pet supplies sales job as generally performed. (AR 55). Plaintiff's counsel then questioned the vocational expert as follows:

> ATTY: Okay. And did you review Exhibit 4E?
>
> VE: Is that the Work History Report?
>
> ATTY: Yes.
>
> VE: It says: customer service, ringing up purchases, cleaning animal cages, care of animals and store. Is that what you are referring to?
>
> ATTY: Sure. And – right, and then lifting and carrying very large bags of food; clean aquariums daily, cages weekly.
>
> VE: Yes.
>
> ATTY: Was lifting up to 50 pounds.
>
> VE: Yes.
>
> ATTY: And so, I guess what I'm trying to understand is, is the job she did, is it's a composite job where she did that job plus some inventory type – I guess inventory or stocking type work, or no? I guess that's my confusion, I guess.
>
> VE: Um-hum. Right. I guess, you know, the DOT definition is not exactly perfect for the job, which is why I said that it was not as-performed. She did perform it at the medium level.
>
> ATTY. Okay. Yeah. I mean, so in your opinion, it would not be a stocker, in addition to that job title, to be a composite? It would just be that job, but not as-performed?
>
> VE: Correct.
>
> ATTY: Okay. Let's see. I guess just to fully understand, if the grooming -- let me start over. You gave the Groomer job. If the Groomer job was done at the same time as the pet supply job, I guess, how would you analyze that?
>
> VE: If it was – yeah, if it was split 50/50, the that would be a composite job.
>
> ATTY: Okay.

> VE: I understood it to be that it was performed at separate times. She tried doing the grooming job, and then she went back to the more retail end of it.

(AR 56-58).

Based on the testimony of the vocational expert, the ALJ concluded at step four that Plaintiff could perform "each and every duty of" her past relevant work as a "Salesperson – Pets and Pet Supplies"[2] as generally performed; and in light of Plaintiff's RFC, the ALJ found Plaintiff is able to perform her past relevant work. (AR 25). Plaintiff argues the ALJ erred at step four by failing to explain her "resolution of the conflicts" in the vocational evidence about her past work, and any error is not harmless because "(1) [the evidence] establishes that Plaintiff's past work at Visalia Pet Fair should have been classified as a composite job because of additional duties not captured by the 'Salesperson – Pets and Pet Supplies' as even the ALJ acknowledged during the hearing; and (2) the RFC's limitation to light work and occasional climbing on scaffolds and ladders conflicts with a position that required heavy lifting and climbing on ladders and scaffolds to stock shelves." (Doc. No. 12 at 5-6).

Ninth Circuit courts have determined when "the job at issue [i]s a composite job, the ALJ [is] precluded from finding that plaintiff could perform the position as it was generally performed in the national economy." *De Romero v. Berryhill*, 2019 WL 93273, at *10 (E.D. Cal. Jan. 3, 2019) (citing *Lepage v. Berryhill*, 2017 WL 4539272, at *2 (E.D. Cal. Oct. 11, 2017); (Doc. No. 12 at 8 (citing Program Operations Manual System (POMS), § DI 25005.020(B), available at https://secure.ssa.gov/poms.nsf/lnx/0425005020, last visited September 20, 2023 ("A composite job does not have a DOT counterpart, so do not evaluate it at the part of step four considering

---

[2] The DOT description of "Salesperson, Pet and Pet Supplies" is:

> Sells pets and pet accessories, equipment, food, and remedies: Advises customer on care, training, feeding, living habits, and characteristics of pets, such as dogs, cats, birds, fish, and hamsters. Explains use of equipment, such as aquarium pumps and filters. Feeds and provides water for pets. Performs other duties as described under SALESPERSON (retail trade; wholesale tr.) Master Title. May clean cages and tanks. May suggest remedies for certain animal diseases or recommend services of VETERINARIAN (medical ser.).

DOT 277.357-042, *available at* 1991 WL 672527.

work 'as generally performed in the national economy.'")); *see also* SSR 82-61, *available at* 1982 WL 31387, at *2. Here, Plaintiff argues her testimony and work history report "does not support a finding that she only worked as a 'salesperson – pet and pet supplies' at Visalia Pet Fair"; rather, the evidence "suggests that she worked in a *composite job as a salesperson, cashier, and stock clerk*, and the ALJ never acknowledged any of this in her findings." (Doc. No. 12 at 8) (emphasis in original). This argument is unavailing.

First, as detailed above, upon questioning by Plaintiff's attorney at the hearing the vocational expert specifically explained that Plaintiff's job in pet sales would *not* be a composite job with inventory or stocking work. (AR 57-58 (noting also that Plaintiff's grooming work would be a composite job "if it was split 50/50" but she performed that job "at separate times" as evidenced by Plaintiff's testimony that she "tried to do the grooming job, and then she went back to more of the retail end of it.")). It was reasonable for the ALJ to rely on the "inherently reliable" explicit testimony of the vocational expert that Plaintiff's job was not composite with stocking or inventory work. *See Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017) ("at least in the absence of any contrary evidence, a [vocational expert's] testimony is one type of job information that is regarded as inherently reliable."); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019) ("Assuming no demand, a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data."); *Hubble v. Astrue*, 467 Fed. App'x 675, 677 (9th Cir. 2012) ("The ALJ properly relied on the vocational expert's testimony that [plaintiff] could perform the work as it is generally performed in the national economy, based on a hypothetical presenting [plaintiff's RFC].") .

Moreover, a composite job contains "significant elements of two or more occupations, and as such, has no counterpart in the DOT." SSR 82-61, *available at* 1982 WL 31387, at *2 (ALJ must evaluate a composite job "according to the particular facts of each individual case."); *see also* POMS § DI 25005.020(B) (a claimant's past relevant work "may be a composite job if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant."). Here, Plaintiff references hearing testimony between Plaintiff's counsel and the vocational expert regarding whether a certain DOT description includes performing

11

1  "stocking" as part of the job; however, Plaintiff fails to cite any vocational evidence in the record
2  to support a finding that "stocking" was a component of her job at all, much less a "significant
3  component" as required to find a job is composite.  Rather, the parties appear to agree that
4  Plaintiff's work history report listed only duties related to retail, including customer service,
5  ringing up purchases, cleaning animal cages, and caring for the store.  (AR 265).

6  Similarly, to the extent Plaintiff argues her past relevant work should have been defined as
7  composite because it was it was actually performed at a medium exertion level, the evidence does
8  not support a finding that heavy lifting and climbing ladders and scaffolds was a significant
9  element of her previous work.  While Plaintiff's work history report noted that she lifted "very
10 large bags of dog food daily," it also indicated that the maximum weight she "frequently" lifted
11 was 10 pounds, as is generally required in the pet salesperson job identified as Plaintiff's past
12 relevant work.  (AR 265); DOT 277.357-042, *available at* 1991 WL 672527.  "[M]edium lifting
13 requirements in a job generally performed with light exertion does not render a job composite
14 where, as here, the lifting requirements were 'incidental to the main job,' and the claimant failed
15 to present any evidence tending to show that the requirement constituted a 'significant part of the
16 job.'"  (Doc. No. 14 at 7 (citing *Dora L. v. Kijakazi*, 2021 WL 4502722, at *13-14 (C.D. Cal.
17 Sept. 30, 2021)); *Laurie A.M. v. Kijakazi*, 2022 WL 2610246, at *4 (C.D. Cal. July 8, 2022) ("A
18 particular job does not become a composite merely because, as actually performed, the particular
19 job included tasks not generally performed in such a job."); *Driskill v. Colvin*, 2014 WL 3734309,
20 at *8 (W.D. Wash. July 28, 2014) (finding Plaintiff did not meet her burden to find waitress job
21 was composite because the "job as actually performed did include stocking and cleaning, duties
22 that are not mentioned in the DOT description of the waitress job, but there is no evidence that
23 these duties constituted a significant portion of her work rendering the DOT's definition
24 inapplicable.").  As to climbing ladders and scaffolds, as noted by Defendant, Plaintiff expressly
25 indicated in her work history report that she performed no climbing at her previous job.  (Doc.
26 No. 14 at 7 (citing AR 265)).  For all of these reasons, Plaintiff has not established that her past
27 relevant work was a composite job.  The ALJ did not err in finding Plaintiff could perform past
28 relevant work as a salesperson – pets and pet supplies, as generally performed.

# VIII.  CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ properly assessed the RFC and found Plaintiff was capable of performing past relevant work at step four.  After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 12) is DENIED.
2. Defendant's Cross Motion for Summary Judgment (Doc. No. 14) is GRANTED and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.
3. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated:     September 20, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE